B. F. DRAKE, RESPONDENT, *v.* JAS. K. SEARS, APPEL-
LANT.

MEASURE OF DAMAGES—WARRANTY OF ENGINE.—In case of a breach of
warranty in the sale of an engine to be used in elevating grain at a ware-
house, the warrantee is entitled to recover of the warrantor such damages
as naturally, according to the usual course of things, would result from
the breach, and the necessary expense incurred by the warrantee in put-
ting up said engine would be such natural damages. So, also, the ex-
pense incurred by the warrantee in handling and storing grain while try-
ing to work the engine which proved a failure.

IDEM—PROFITS OF BUSINESS.—As a rule, the loss of the profits of a business
which has been interrupted by a breach of warranty can not be claimed,
unless the parties are shown to have contemplated, or can reasonably be
presumed to have contemplated such loss at the time the contract was
made.

APPEAL from Polk County. The facts are stated in the
opinion.

*B. Hayden, W. H. Holmes, and X. N. Steeves,* for appellant.

*Magers & Lawson and Daly & Gaby,* for respondent.

By the Court, BOISE, J.:

This is an action to recover the price of an engine, boiler,
and appurtenances, alleged by the respondent to have been
by him sold and delivered to the appellant at the agreed price
of seven hundred and fifty dollars; also to recover the sum
of four hundred and fifty-three dollars and twenty-one
cents for materials and machinery sold and delivered
to the appellant by the respondent on a book account, both
claims aggregating the sum of one thousand two hundred
and three dollars and twenty-one cents.

The defendant, in his answer, denied the absolute sale of
the engine, and denies that the materials and other ma-
chinery, contained in plaintiff's second cause of action,
were worth more than the sum of three hundred and sixty-
two dollars and eighty-eight cents, and alleges that the
same were purchased by defendant at the agreed price of
said three hundred and sixty-two dollars and eighty-eight
cents between the plaintiff and defendant, and admits that
they were worth that price; so that the only controversy as

14

to these articles named in said count of the complaint is as to the price.

As to the engine named in the first count of the complaint, the defendant, after denying the sale and indebtedness therefor as alleged in the complaint, alleges, by way of a separate and further answer, that he purchased the same to be used in his warehouse at McCoy, in Polk County, in elevating and cleaning grain; that the plaintiff warranted the engine to be perfect, and capable of doing the work of elevating and cleaning the grain at his said warehouse in a complete and satisfactory manner, and that it was a good and capable engine for said purposes, and that the defendant was not to pay for the engine until it was proved to be capable; that the engine was received by the defendant at the earnest request of plaintiff, and on his express warranty that it was sufficient for said purposes; that the plaintiff selected a man, by the name of J. F. Leach, to set up the engine to give it a fair trial, for whose services the defendant was to pay three dollars and a half per day; that said J. F. Leach did set up said engine in said warehouse, but that it could not be made to do the work, and that the same proved worthless, and that the defendant notified the plaintiff of that fact, and that he would not accept said engine; that said Leach was employed on said engine, in putting up and trying to operate the same, eleven days, between the twentieth day of August, 1879, and the fifth day of September of the same year, and that defendant has paid said J. F. Leach eighteen dollars on said work.

Defendant claims that there has been a breach of said warranty by the plaintiff, and claims damages therefor in the following allegations in his answer:

"Defendant alleges that under the contract aforesaid the plaintiff was to deliver said machine on or before the sixteenth day of July, 1879, but the same was not delivered until some days later, to wit: about the twenty-first of August, 1879. Defendant alleges that by reason of the aforesaid representation and warranty of the plaintiff, the defendant paid for hire of teams and men, and for materials used in trying to operate said engine—amounting to two hundred

and twenty-one dollars and fifty cents, to his damage in that amount. And defendant further alleges, that by reason of the worthlessness of said engine and the failure of the same to do the work as warranted, the defendant was unable to properly store and care for the grain received at his said warehouse, and was compelled, in consequence thereof, and the contracts of defendant with other parties, to receive and store large quantities thereof, to wit, about ten thousand bushels of wheat, out of doors, where the same was exposed to the storms, and the defendant was thereby compelled to expend large sums of money in handling and removing said wheat, to wit, one hundred dollars, and two hundred bushels was rendered unmarketable in consequence thereof, and the defendant was thereby damaged in the sum of one hundred dollars.

"And the defendant further alleges that, by reason of the failure of said engine to do the work as warranted, as aforesaid, the defendant was compelled to secure the services of another engine, at great trouble and expense, to his damage in the further sum of one hundred dollars. And the defendant further alleges that, by reason of the said worthless character of said engine, and the failure of the plaintiff to make the same work, as warranted, in driving the cleaning and elevating machinery of the defendant aforesaid, sundry and divers persons, with whom the defendant had entered into contract to receive and store their grain for the year 1879, at said warehouse of the defendant, and who had then sacks belonging to the defendant for the purpose of sacking such grain for the purpose of hauling the same to the warehouse of the defendant, refused to deliver their sacks of wheat to the defendant, and the defendant thereby lost all of such contracts. And, defendant further alleges, that in consequence of the failure of said engine to do the aforesaid work, as warranted aforesaid, the defendant was unavoidably prevented from putting large quantities of said wheat, so received by him at his said warehouse, in the bins of said warehouse, and was thereby compelled to, and did, purchase sacks to sack the same, to wit: Six thousand sacks to the further damage of the defendant in the sum of two hundred and forty dollars.

" Defendant alleges that he did not and could not, with reasonable diligence and skill, ascertain the fact of the useless character of said engine until about the seventh day of September, 1879, when he immediately notified plaintiff, as hereinbefore stated. Defendant alleges that he is damaged, in consequence of the breach of the aforesaid warranty of plaintiff, in the aggregate over and above the lawful demands of the plaintiff of three hundred and sixty-two dollars and eighty-eight cents, in the full and just sum of seven hundred and fifty-five dollars and thirty-seven cents. Wherefore defendant demands judgment against plaintiff for the sum of seven hundred and fifty-five dollars and thirty-seven cents and costs and disbursements herein sustained and expended."

The plaintiff demurred to these several defenses, for the reason that they did not state facts sufficient to constitute a cause of action for a breach of the warranty.

If the plaintiff warranted the engine to have capacity to do the work of elevating and cleaning the grain at the defendant's warehouse, and by such warranty the defendant was, as he alleges, induced to take the same and set it up, and the engine proved a failure without the negligence or fault of the defendant, then there was a breach of the warranty, and the defendant would be entitled to recover for such breach such damages as naturally, according to the usual course of things, would result from such breach, which was the failure of the engine to do the work. The expense which the defendant incurred in employing men and teams to work, and furnishing materials to be used in putting up the engine, would, we think, be such natural damages, and such are the damages claimed in the first special answer, to which the demurrer was sustained. Such answer is not very full and specific, but no objection is made to it on that account, and we think the matter contained in it is pertinent and proper to be claimed for a breach of such warranty. So, also, the damage claimed as resulting from the failure of the engine to elevate grain, so that the defendant was unable to properly store or care for grain that came to his warehouse, and was compelled to leave ten thousand bushels out doors, where it was damaged by the elements,

was, we think, the natural result of the failure of the engine to work, and such as the parties, when they made the contract of sale and warranty, might reasonably contemplate would result from such failure. (3 Pars. Con. 183, note.)

The next special answer or counter claim is simply an allegation that the defendant was, by reason of said failure, compelled to secure another engine. Whether he hired it or bought it, does not appear, or how he was damaged. We think there is no sufficient statement of a counter claim stated in this allegation.

The next separate counter claim is that defendant lost his customers who had taken sacks, and, as he alleges, would have stored wheat with him. He alleges that he lost business, but does not allege what profit he could have made on these contracts. He states what he was to have for storing and caring for the grain; but for all that appears the expense of storing, work, and losses attending it might be more than he was to receive. And we think, if such profits could be legitimately claimed, that no case is stated in this separate answer. As a rule, the loss of the profits of a business that has been interrupted by a breach of warranty can not be claimed unless the parties are shown to have contemplated, or can reasonably be presumed to have contemplated such loss at the time the contract was made, for the breach of which the action is brought. (3 Pars. 183; 5 Barb. 424; 4 Id. 261.) So we think the demurrer to this part of the answer was properly sustained.

So, too, the defendant in the next separate answer, where he alleges that he was compelled to purchase six thousand sacks, to his damage two hundred and forty dollars, does not show how the damage resulted, and the allegation is not sufficient to state a counter claim, and the demurrer to this allegation was properly sustained.

We think, for the reasons stated, that the court erred in sustaining the demurrer to the several answers which we have sufficiently pointed out in this opinion. The judgment of the circuit court will therefore be reversed and a new trial ordered.