[No. 4543.  Decided May 6, 1903.]

PUGET SOUND IRON AND STEEL WORKS, *Appellant,* v. C. H. CLEMMONS *et ux., Respondents.*

SALES — WARRANTY — PAROL EVIDENCE.

Parol evidence of oral warranties is admissible where the only written contract in connection with the sale of machinery was an order for it in the shape of a letter, which did not purport to con-

tain any part of the contract or conditions which the seller was
to perform.

SAME — BREACH.

A warranty that a road engine was free from defects and im-
perfections and that the seller would replace all defective parts
free of charge was broken, where the seller, after supplying new
drums several times in place of those breaking because of defects
in manufacture, refused to replace the last one breaking because
of its inability owing to a strike at its works.

SAME — MEASURE OF DAMAGES.

The measure of damages upon the breach of a warranty to
replace defective parts of a road engine free of charge to the
purchaser would be the expense he was put to in replacing the
broken parts elsewhere upon the seller's refusal to supply new
ones, and would not include loss of profits in logging as within
the contemplation of the parties, where the seller had no knowl-
edge of the extent of the purchaser's operations, the number of
logs he was hauling, the number of men or machines he was
working, or the character or length of the roads the logs was
hauled over (*Skagit Ry. & L. Co. v. Cole*, 2 Wash. 57, and *Graham
v. McCoy*, 17 Wash. 63, distinguished) (DUNBAR, J., dissents).

Appeal from Superior Court, Chehalis County.—Hon.
MASON IRWIN, Judge. Reversed.

*J. A. Hutcheson* and *Bates & Murray* (*John H. Mc-
Daniels,* of counsel), for appellant:

The only warranty that could be implied arose from
the fact that appellant was the manufacturer of the en-
gine it was selling. This warranty would only go to se-
cure against "latent defects, not disclosed to the purchaser,
arising from the manner in which the article was manu-
factured." *Hoe v. Sanborn,* 21 N. Y. 552; *Kellogg
Bridge Co. v. Hamilton,* 110 U. S. 108 (28 L. ed. 86).
The mere fact that a party purchasing articles intends to
use them for a particular purpose does not charge the seller
with an implied warranty that they will accomplish or
fulfill that purpose. *Port Carbon Iron Co. v. Groves,* 68

Pa. St. 149; 2 Benjamin, Sales (6th Am. ed.), § 987; 1 Parsons, Contracts, pp. 586-588; *Wisconsin R. P. Brick Co. v. Hood,* 54 Minn. 543. When a person ordering a machine reduces the order to writing, he cannot prove any additional warranty by parol. *Shepherd v. Gilroy,* 46 Iowa, 193; *Seitz v. Brewers' Co.,* 141 U. S. 510 (35 L. ed. 837); *Wheaton Roller-Mill Co. v. Noye Mfg. Co.,* 68 N. W. 854; *Mullain v. Thomas,* 43 Conn. 252; *Milwaukee Boiler Co. v. Duncan,* 87 Wis. 120; *Nichols v. Crandall,* 6 L. R. A. 412; *Staver v. Rogers,* 3 Wash. 603; *Goulds v. Brophy,* 6 L. R. A. 392.

To the effect that the written order given in this case for the engine, when accepted, constituted a contract in writing that cannot be changed by evidence of prior conversations, see *Millett v. Marston,* 62 Me. 477; *Lamson, etc., Service Co. v. Hartung,* 19 N. Y. Supp. 233; *Diebold Safe & Lock Co. v. Huston,* 28 L. R. A. 53.

*J. B. Bridges,* for respondents:

Upon the point that the measure of damages upon breach of a warranty of a road engine sold to be used in the logging business would include the purchaser's loss of profits, the respondents cite *Herring v. Skaggs,* 62 Ala. 180; *Borradaile v. Brunton,* 8 Taunt. 535; *Passinger v. Thornburn,* 34 N. Y. 634; *Beeman v. Banta,* 23 N. E. 887; *Coyle v. Baum,* 41 Pac. 389; *Nye v. Snyder,* 77 N. W. 118; *Shaw v. Smith,* 25 Pac. 886 (11 L. R. A. 681); *Briggs v. Rumely Co.,* 64 N. W. 784; *Kester Bros. v. Miller Bros.,* 119 N. C. 475; *Brownell v. Chapman,* 51 N. W. 249; *Shepard v. Milwaukee Gas Light Co.,* 15 Wis. 318; *Houser v. Pearce,* 13 Kan. 104; *Crescent Mfg. Co. v. Nelson Mfg. Co.,* 100 Mo. 325.

The opinion of the court was delivered by

MOUNT, J.—In May, 1900, respondent C. H. Clemmons purchased a logging engine from appellant. The engine was of appellant's manufacture, and the purchase price was $2,500. Of this amount, respondents paid $835, and for the balance gave three notes, of $555 each. To secure the payment of these notes, respondents gave a chattel mortgage on the engine. One of the notes was subsequently paid, but respondents failed to pay the other two when due. Whereupon appellant brought this action to recover the amount of the two notes, and to foreclose the mortgage; alleging the execution and delivery of the notes and mortgage, the amount due thereon, and that $175 was a reasonable attorney's fee for the foreclosure. Respondents answered, admitting the execution and delivery of the notes and mortgage, and the non-payment thereof, but denied that any attorney's fee should be allowed, and as an affirmative defense, alleged that the notes sued on were given as part of the purchase price of said engine; that the total purchase price was $2,500, of which $835 was paid in cash at the time of purchase, and notes given for the balance; that one of these notes for $555 had been paid since. They further alleged that at and before the time of the purchase of the engine they informed appellant that they intended to use the engine to haul logs a distance of about 5,000 or 6,000 feet; that appellant represented the engine to be peculiarly fitted for such purpose, and represented that it was of the best material and workmanship, "and expressly orally warranted the said engine to properly and satisfactorily perform the duties and do the work for which the respondents were purchasing the same." They then alleged that the drum of said engine was of inferior material and defective workmanship and

did not do the work which appellant represented it would do; that the engine was on said account not worth to exceed $1,000; and that there was want of consideration of at least the amount demanded in the complaint. By way of counterclaim, respondents alleged as a further defense that, at the time of the purchase of the engine, respondents informed appellant that they desired an engine of sufficient power and capacity to carry 5,000 feet of cable, and to haul logs that distance; that appellant represented its engine to be the best in the market for that purpose, and verbally warranted that it would for one year satisfactorily operate and perform said work, and warranted it to be of the best material and workmanship; that after the engine had been operated twenty-two days the drum broke; that appellant furnished another drum, which also broke after being used eleven days; that thereupon appellant furnished a third drum, which also broke, and this continued until five drums in all had been used and broken. All of these drums were furnished free of charge to respondents, except the expense of transportation, which is alleged to be $100 on each of the extra drums; that these breaks occurred without fault or negligence on the part of respondents, and were due entirely to the use of defective material and unskilled workmanship in manufacture; that after the breaking of the fifth drum the respondents procured of another manufactory a good and sufficient drum at a cost of $500; that on account of these different breaks the operation of the logging camp conducted by respondents was interrupted, men were kept in idleness, some of their men went away, and respondents suffered loss of profits, whereupon they demanded the cancellation of the note and mortgage, and a judgment against appellant for $6,500 and costs. Appellant replied to the answer,

and denied making any warranty, or any facts amounting to a warranty, and alleged that respondents ordered an engine of the kind, quality, and description in every respect like said engine, including the drum; denied that the engine or drum was inferior or defective; alleged that appellant refused to. warrant the engine; and denied that, aside from the mere agreement to furnish an engine of the description given by respondents, any other agreement was made, except to replace free of cost at appellant's works in Tacoma any defective parts, in case respondents should first return the defective parts, freight prepaid, to appellant in Tacoma. The case was tried in equity, a jury being called to render an advisory verdict for the guidance of the court. The court made findings of fact and conclusions of law. The facts were found for appellant as to the cause of action declared on in the complaint. But the court found that there was a warranty of the engine; that the drums furnished by appellant were of defective materials and workmanship; that respondents had been damaged in the sum of $200 for freight on worthless drums, and $500, the expense of the last drum, known as the "Portland" drum, and that the respondents had been damaged in the sum of $2,000 for loss of profits. A decree was entered for respondents in the sum of $1,348.80, being $2,700, the amount of damages found in favor of respondents, less the amount found due on the notes, which was $1,351.20.

A large number of errors are assigned by appellant, but they are all discussed under three heads, as follows: (1) What was the contract entered into by the parties? Did it include a warranty? (2) Was there any breach? (3) If there was a breach, what was the proper measure of damages? In regard to the contract, Mr. Clemmons, one of the respondents, testified as follows:

"I said to him [meaning Mr. Marconnier, secretary of the appellant company], I was in the logging business here in Chehalis county, and was in need of a large road engine, capable of hauling logs for a distance of 5,000 or 6,000 feet—at least 5,000; that I had at my camp a 10x12 Washington Iron Works engine, . . . but that the drum was not large enough to hold that amount of wire —the amount necessary to make that haul; that I had been advised by different parties to get one of their engines. I went there anyway. He said that they had a 10x15 engine—road engine—which would do the work satisfactorily for that long haul, and, of course, gave me points about it; the size shaft, drum, coil, etc. Mr. Marconnier told me they were making a 10x15 road engine that was just what I would want for that long haul, and especially adapted for that purpose, and I gave him the order for the engine. He told me how much wire the drum would hold, etc., the size of the wire, the different points about it, double friction, etc., and said they would like nothing better than to place that engine alongside of the Seattle engine 10x12."

Mr. Clemmons further testified that he thereupon went into the shop, and looked at the construction of one of the engines, and had about the same conversation there again. On cross-examination he was asked the following question:

"I ask you, Mr. Clemmons,—to go back to the time of the purchase of this engine,—if it is not a fact that at that time Mr. Marconnier told you that they would replace any defective parts in this engine on the cars at Tacoma free of cost to you, that broke, provided you would return the defective or broken parts, and that was the express understanding between you and them? Answer: There was some kind of a conversation like that; yes, sir."

Mr. Marconnier testified in reference to the contract as follows:

"Well, Mr. Clemmons came into the office, and I met him there. He stated he wanted a logging engine. I

asked him what kind of an engine he wanted, and he said a 10x15 engine. I asked him if he knew the engines, and had seen them work. He said that he had. I said: 'Naturally the engine speaks for itself.' Of course, our aim was to make a good engine, and that if he purchased one of our engines, and, after using it and running it in camp, a casting should break or become defective, that we would replace said defective casting free of cost at our works, provided, however, that he return the defective parts to us, and free of cost to us."

Mr. Marconnier also testified that nothing was said about the haul of 5,000 or 6,000 feet, and that, after they had looked the engine over and agreed upon the terms, he dictated and Mr. Clemmons signed a contract as follows:

"Tacoma, Washington, March 29, 1900.
Puget Sound Iron & Steel Works,
    Tacoma, Wash.
Gentlemen:—
    You will please to enter order for one of your standard 10x15 road engines with large gear, and for which I agree to pay therefor the sum of $2,500 as follows: $100 cash with this order; $735 when engine is ready for delivery; $555 in three months from time of delivery; $555 in six months from time of delivery; and $555 in nine months from time of delivery. I agree to give notes for deferred payment to draw ten per cent. interest per annum until paid and secure said deferred payments by mortgage upon said engine. Said engine to be ready in about five weeks from the date hereof.
                        Yours truly,
                                C. H. Clemmons.
Address: Montesano.
    Engine in Chehalis County.
    Will notify when to ship."

Mr. Marconnier was corroborated by other witnesses to the effect that nothing was said about the length of the haul, and that there was no warranty that the engine would

do the work for which respondents were purchasing the same. The evidence shows, without dispute, that the drums broke without fault of respondents, and that other drums were furnished, without cost, by appellant on board the cars at Tacoma; that appellant did not require respondents to return any of the broken pieces, except probably one piece; and that the last drum was not furnished by appellant because of a strike of employees in appellant's shop. While there is some dispute in the evidence as to what the contract was, the weight of the evidence is clearly with the appellant, that there was no warranty that the engine would do the work which respondents were doing with it. The lower court was justified in finding from the evidence only that there was a warranty of the engine as being free from defects and imperfections. Counsel for appellant strenuously argue that the order for the engine as set out above is conclusive against warranty of any kind, and that the respondents can not be heard to say that there was any other agreement than that contained in the order. A number of authorities are cited to the effect that, where an article is sold by a formal written contract, which is silent on the subject of warranty, no oral warranty made at the time or previously can be shown, as the writing is conclusively presumed to embody the whole contract. But these cases are generally cases where the articles purchased are of a special known kind, and where there was a formal contract embodying all the terms and conditions of the agreement. But there is no such formal contract in this case. The contract here is simply an order for the engine, signed in the form of a letter by respondent C. H. Clemmons only. It does not purport to contain any part of the contract or conditions which the appellant was to perform. This court, in *Gor-*

*don v. Parke & Lacy Machinery Co.,* 10 Wash. 18 (38
Pac. 755), stated the rule as follows:

"Where there have been collateral oral agreements, and
the parties have not, by their written contract, appeared
to intend to reduce their entire negotiation to written form,
there are many cases sustaining the admission of parol
evidence concerning the unwritten terms of such agree-
ments. 17 Am. & Eng. Enc. Law, p. 443; *Pierce v.
Woodward,* 6 Pick. 206; *Chapin v. Dobson,* 78 N. Y. 74
(34 Am. Rep. 512); *Willis v. Hulbert,* 117 Mass. 151;
*Graffam v. Pierce,* 143 Mass. 386 (9 N. E. 819). But in
all of the foregoing, as well as in many other cases which
might be cited, the written contract itself was resorted to
as the source of authority for receiving parol evidence;
and this is the universal rule. 'The test of the complete-
ness of the writing proposed as a contract is the writing it-
self. If this bears evidence of careful preparation, of a
deliberate regard for the many questions which would
naturally arise out of the subject matter of the contract, if
it is reasonable to conclude from it that the parties have
therein expressed their final intentions in regard to the
matters within the scope of the writing, then it will be
deemed a complete and unalterable exposition of such in-
tentions. If, on the other hand, the writing shows its in-
formality on its face, there will be no presumption that it
contains all the terms of the contract.' "

Under this rule it is clear that parol evidence was ad-
missible to prove a warranty in the case at bar.

2. Was there a breach of the warranty made? There
is really no dispute in the evidence upon this question.
Five drums broke within a short time. They all broke be-
cause of defects in manufacture. Flaws in the iron were
discovered after the breaks. Four of these drums were
furnished by appellant to respondents without cost, except
the freight. When the fifth drum broke, appellant was
not able to replace it because of a strike at its works, and

refused to do so on that account.    This was certainly a
breach of the agreement to supply defective parts.

3.    What is the proper measure of damages?    The gen-
eral rule, as stated in 28 Am. & Eng. Enc. Law, p. 836, is
as follows:

"Where the vendor makes the warranty in good faith,
and not fraudulently, or with a knowledge that it is un-
true, or likely to prove so, the measure of damages recov-
erable by the vendee is governed by the rule applying in
other cases which involve nothing more than a mere breach
of contract.    This rule, as laid down in a leading case,
and steadily adhered to ever since, is that 'when two par-
ties have made a contract which either of them has broken,
the damages which the other ought to recover in respect to
such breach of contract, should be either such as may
fairly and reasonably be considered as arising naturally,
that is, according to the usual course of things, from such
breach of contract itself, or such as may be reasonably
supposed to have been in contemplation of both parties at
the time they made the contract, as the probable result of
a breach of it.'    The effect of this rule is to exclude the
consideration of all remote and speculative damages, or
those depending upon mere contingencies.    It embraces
two distinct classes of damages:    First, those which are
a natural and necessary result of the breach, and second,
those which the parties may be supposed reasonably to
have had in contemplation, when the sale was made, as a
probable result of a breach."

There is no claim in this case that the warranty was in
bad faith, and we think the evidence fails to show that the
warranty amounted to more than that the machine was a
perfect one of its kind, and that any breaks or imperfec-
tions would be remedied by furnishing new parts free on
board cars at Tacoma.    We also think that loss of profits
in logging, or on account of inability to carry on logging
operations, could not reasonably have been in contempla-

tion of the parties at the time of the sale.    There is no
evidence at all in the record tending in any way to show
that appellant knew the extent of respondents' operations,
the number of logs he was hauling, the number of men or
machines he was working, or the kind or character of
roads the logs were hauled over.    These things would cer-
tainly have been mentioned at the time of the contract if
appellant intended to give a warranty that the engine
would do the work which respondent was going to put it
to, and, in case of failure, to be liable for the loss of profits
of a large logging company.

The respondents rely upon the cases of *Skagit Ry. & L.
Co. v. Cole,* 2 Wash. 57 (25 Pac. 1077), and *Graham v.
McCoy,* 17 Wash. 63 (48 Pac. 780).    In each of these
cases, however, it was found that the party violating the
contract either knew or must have contemplated the loss
which necessarily followed his violation of the contract,
and was therefore held liable for the profits.    But, as we
have seen above, the appellant here does not come within
that rule.    The court, following the advisory verdict of
the jury, found damages in favor of respondents in the
sum of $2,700.    The advisory verdict of the jury was as
follows:

"We, the jury duly empaneled and sworn to try this
cause, do make the following as our verdict and findings:

1.    Defendants have been damaged in the difference
between the price agreed to be paid for the engine and the
value of the same as furnished defendants, in the sum of
$——.

2.    On account of freight and other expenses in getting
the extra drums from Tacoma into their camp, the sum of
$200.

3.    On account of idle workmen, crew leaving, ex-
penses of getting new crews together, the sum of $——.

4.    On account of the sixth or so-called Portland drum, the sum of $500.

5.    On account of loss on account of inability to put in logs, the sum of $2,000.

J. M. Carter, Foreman."

The court also submitted special interrogatories to the jury, and the jury made findings thereon as follows:

"Q.    Did any damages result from the breaking of the first drum? If so, how much? A. No. Q. Did any damages result from the breaking of the second drum? If so, how much? A. No. Q. Did any damages result from the breaking of the third drum? If so, how much? A. No. Q. Did any damages result from the breaking of the fourth drum? If so, how much? A. Yes. Q. Did any damages result from the breaking of the fifth drum? If so, how much? A. Yes."

There is practically no dispute in the evidence upon that part of the contract which related to replacing broken or defective parts of the engine. Nor was there any dispute that the freight and cost of replacing the drums was $100 each. The jury, by the special verdicts, found that no damages resulted from the breaking of the first, second, and third drums. These special findings could have been made only upon the theory that the contract was that these extra drums were to be furnished free on the cars at Tacoma. They are in accord with the evidence upon that subject. There is no consistency in the finding that freight was to be paid on a part of the drums, and not on all, because there was no contention that there was any change in the terms of the contract in this respect. If respondents were entitled to recover for freight on one drum, they were entitled to recover on all. If they were not entitled to recover on the first, second, and third drums, they were not entitled to recover on any; and the special verdict, therefore, is in conflict with the finding of damages for freight

in the sum of $200, and that finding must fail.   The evidence shows that the "Portland" drum cost $500.   A part of this was freight from Portland.   Respondents were entitled to have the cost of the drum at Portland, and the freight paid from Portland to Tacoma.   There is nothing in the record to show that the cost of this drum at respondent's camp was more than it would have been at Tacoma.   For this reason, we are not disposed to disturb this finding.

. For the reasons above stated, the finding for $2,000—being for loss of profits—must be set aside.   For the reason that the damages proved do not amount to the admitted indebtedness owing by respondents to the appellant, the attorney's fee provided in the mortgage, viz., $175, should be allowed.

The cause is reversed and remanded, with instructions to the lower court to enter a decree of foreclosure for the amount payable on the two notes sued on, together with $175 attorney's fees and costs, less an offset of $500. Appellant to recover costs on this appeal.

FULLERTON, C. J., and ANDERS and HADLEY, JJ., concur.

DUNBAR, J.—I dissent.   I think the judgment should be sustained, under the rule announced in *Skagit Ry. & Lumber Co. v. Cole, supra,* and that the damages proven may reasonably be said to have been contemplated by the parties when the contract was made.