Argued February 28, reversed and remanded March 19, sustained on rehearing July 30, 1918.

# FEENEY & BREMER CO *v.* STONE.*

### (171 Pac. 569, 174 Pac. 152.)

#### Sales—Breach of Warranty—Reliance and Inducement.

1. In action for breach of warranty, plaintiff must show that the warranty was relied on and that it was an operative cause, although it need not have been the sole inducement.

#### Sales—Pleading—Breach of Warranty.

2. In action for breach of warranty of personal property, the purchaser must allege he relied upon the warranty and was thereby deceived.

#### Sales—Rescission—Breach of Warranty—Return of Property.

3. The purchaser of a machine may rescind the contract and return the machine within a reasonable time after delivery, if it is not as warranted.

#### Sales—Contracts—Remedies of Purchaser.

4. Generally, in a contract of sale, in the absence of language evidencing an intention to make a given remedy, such as a right given to the purchaser to retain without charge the article, if not as warranted, exclusive of all others, such remedy will be deemed cumulative and permissive rather than exclusive and mandatory.

> [As to remedies of vendee for breach of warranty of quality, see note in 54 Am. Dec. 146.]

#### Sales—Warranty—Remedies of Purchaser.

5. A purchaser's right to proceed on the warranty in his sale contract was not destroyed by the seller's agreement that if the property sold were not as warranted the purchaser could keep it without paying for it, especially when the purchaser waived any right arising out of the promise not to charge and sued on the warranty.

#### Sales—Breach of Warranty—Damages.

6. When the seller of personal property has breached his express warranty to furnish an article of a specified kind, quality or condition, he is liable, as in the case of any other kind of a contract, for both general and special damages.

#### Sales—Breach of Warranty—Effect of Acceptance.

7. Acceptance of property sold does not of itself preclude the buyer from recovering damages for breach of warranty.

*On construction of provision for return on the event of rescission for breach of warranty, see note in 32 L. R. A. (N. S.) 212.

As to profits lost in consequence of breach of warranty of machinery purchased for vendee's use as element of damage, see note in 2 B. R. C. 79.

On loss of profits as element of damages for breach of warranty, see note in 52 L. R. A. 233, 240.      REPORTER.

**Damages—Breach of Warranty—Reduction of Damages.**

8. In case of breach of warranty in a contract of sale, the buyer owes an active duty to exercise ordinary care to keep the damages as low as possible.

**Sales—Breach of Warranty—Damages—Expenses.**

9. If buyer of a machine was obliged, because the machine bought did not work, to rent another machine to prevent loss to himself, he was entitled to reimbursement from the seller to the extent such expense was extra in character and reasonable in amount.

**Sales—Breach of Warranty—Anticipated Profits.**

10. The theory of the law being to award compensation for gains prevented and losses sustained, and anticipated profits not being non-recoverable merely because they are such, if it is reasonably certain that the breach of a contract has deprived the complaining party of a profit which was contemplated or can reasonably be presumed to have been contemplated by the parties at the time the contract was made, then the party committing the breach is liable for the loss of the profit.

**Sales—Breach of Warranty—Special Damages.**

11. In order to recover special damages for a breach of warranty, the buyer must allege and prove that the special damages claimed by him are such as were contemplated, or may reasonably be said to have been contemplated, by the parties at the time they made the contract.

**Sales—Special Damages—Loss of Profits.**

12. If at the time of sale of a hoist the seller did not know that the buyer intended to use it in the sale of gravel to the public, the buyer could not recover loss of profits on account of the seller's breach of warranty of the hoist, since it could not be said the parties contemplated such loss as a result of breach.

### ON REHEARING.

**Sales—Breach of Warranty—Anticipated Profits.**

13. In action for price of machinery to be used in loading gravel, defended on ground of breach of warranty, the purchaser could not recover anticipated profit on mere allegation that he could have sold the gravel, in the absence of showing that he had definitely contracted to that effect; the damages being too remote.

**Pleading—Demurrer—When Proper.**

14. Where answer, in action for price of machinery, disclosed breach of warranty, sought recovery for special damage for loss of profits, but failed to set out the facts entitling defendant to recover therefor, the plea was nevertheless not demurrable, being good for at least nominal damages, and the proper method of attack was by objection to the evidence.

**Sales—Breach of Warranty—Damages.**

15. Where defendant purchased machinery for loading gravel, but because of breach of warranty of the machinery was prevented from selling the gravel or handling it, since he still had the gravel, his measure of damages was the difference between the contract and the market price of the gravel, constituting the profit which he lost.

From Tillamook: GEORGE R. BAGLEY, Judge.

Department 1. The plaintiff Feeney & Bremer Com‚ pany, a corporation, operates a metal foundry and manufactures machinery. The defendant has a gravel-bar and, since August 1, 1915, has been engaged in the business of selling gravel. The complaint alleges that between July 1, 1915, and January 26, 1916, the plaintiff delivered certain materials and performed services for the defendant of the reasonable value of $591.43; that $301 has been paid; and that $290.43, the unpaid balance, is due. Among the items appearing in the itemized statement, attached to the complaint, is a drum-hoist valued at $450. The controversy between the litigants relates to the hoist and consequently no further notice will be given to the other items mentioned in the pleadings.

For a defense the answer avers that on or about July 1, 1915, the defendant was negotiating with manufacturers for an electric hoist to be used in hoisting gravel into bunkers and that at the same time he was negotiating with the Coast Power Company of Oregon for electricity with which to operate such a hoist; that while the defendant was negotiating the plaintiff approached the defendant and requested him to purchase a hoist from the plaintiff and

"offered and agreed to construct for the defendant such a hoist as defendant required in his said business, and agreed that if the defendant would give the plaintiff an order for the said hoist, that the plaintiff would construct such a hoist, and expressly guaranteed that if such order were given to plaintiff, that the hoist which the plaintiff would construct and deliver to defendant would be a hoist which would stand up to the work and accomplish the purposes of the defendant in that behalf in carrying on his business, and that if said hoist did not work, plaintiff would make the same do so, and if the machine would not work that plaintiff

would charge the defendant nothing therefor." The defendant alleges that "in consideration of the representation and guarantee of the plaintiff as aforesaid, the defendant agreed to purchase from plaintiff the drum hoist referred to, at the agreed price of $450, but in consideration of the said representations, agreement and warranty of the plaintiff in regard thereto as aforesaid."

It is averred in the answer that the plaintiff constructed and delivered an electric hoist but that it was faultily constructed; "that the same would not stand the work required to be done thereby by the defendant and which was contemplated by the parties," and that "the reasonable value of said hoist so furnished was no more than the sum of $100," although it would have been worth $450 if it had been built in full compliance with the agreement.

The defendant also pleads a counterclaim. He avers that the hoist was first delivered to him in July, 1915; that he began using it on August 1, 1915, and although the "machine frequently gave way" he continued to operate it until August 24, 1915, when it "completely broke down"; that he

"thereupon requested plaintiff to repair the same so that it would work as had been agreed, but the plaintiff delayed repairing the same until on or about the 1st day of September, and by reason of said delay of the plaintiff the defendant was compelled to rent other equipment in order to operate his plant."

Continuing, the defendant alleges "that plaintiff did thereafter overhaul and put in repair the said hoist and redeliver the same to defendant," but that it has never been capable of doing the work contemplated by the agreement.

The defendant then avers:

"That in order to carry on the defendant's operations, on account of the failure of the said machine

so furnished by plaintiff to do the work represented to be done and guaranteed to be done by said machine, the defendant has been compelled to procure other machinery to operate his plant, and has necessarily expended on account thereof the following sums:

"For rent of donkey-engine...............$120.00;
"For labor in moving engine................ 59.00;
"For fuel for operating donkey-engine...... 124.95;
"For extra labor for operation of donkey-engine ................................100.00"

It is also alleged that because "of the incapacity of the said hoist to properly perform" during the month of August he lost a profit of 50 cents per yard on 500 yards of gravel which he could have sold to the Arenz Construction Company and a profit of 20 cents per yard on 340 yards of gravel which he could have sold to Tillamook County.

There was a verdict and judgment for the defendant for $355 and the plaintiff appealed.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. Sidney S. Johnson* and *Mr. T. B. Handley,* with an oral argument by *Mr. Johnson.*

For respondent there was a brief and an oral argument by *Mr. H. T. Botts.*

HARRIS, J.—Briefly stated, the defendant contends that he is entitled to have the price of the machine reduced to $100 and that he is also entitled to special damages: (1) For the expense of the donkey-engine; (2) for profits which he lost by reason of his inability to furnish gravel in the month of August to the Arenz Construction Company and to Tillamook County. There is no claim of any loss of profits except for the month of August.

The plaintiff contends that the judgment should be reversed because: (1) The answer does not contain an affirmative allegation that the defendant relied upon the warranty pleaded by him; (2) the warranty is limited to and extends no further than the stipulation that the "plaintiff would charge the defendant nothing" if the hoist did not work; (3) partial failure of consideration was the only defense available to the defendant; and (4) the damages mentioned in the counterclaim were not within the contemplation of the parties and are too remote and speculative and therefore not recoverable.

1, 2. In order to maintain an action for a breach of warranty it must be shown that the warranty was relied upon; and although the warranty need not have been the sole inducement it must have been an operative cause: 35 Cyc. 376; 2 Mechem on Sales, §§ 1234, 1235; and, therefore, in an action for a breach of warranty the purchaser of personal property must allege that he relied upon the warranty and was thereby deceived: *Abilene Nat. Bank* v. *Nodine,* 26 Or. 53, 55 (37 Pac. 47); 35 Cyc. 450.   The defendant insists that this rule of pleading is satisfied by the following allegation appearing in the answer:

"In consideration of the representation and guarantee of the plaintiff as aforesaid, the defendant agreed to purchase from plaintiff the drum hoist referred to, at the agreed price of $450, but in consideration of the said representations, agreement and warranty of the plaintiff in regard thereto as aforesaid * * ."

It is intimated in *Lincoln* v. *Ragsdale,* 7 Ind. App. 354, 356 (31 N. E. 581), that the quoted allegation would be sufficient.   While the averment lacks directness and positiveness nevertheless it might possibly be adequate after a verdict and judgment, since, so

far as the record discloses, the objection was not made in the lower court but is made here for the first time. The judgment should be reversed for other reasons, however, and all doubts concerning the sufficiency of the pleading may be removed by the filing of an amended answer.

3–5. The answer avers that the plaintiff "expressly guaranteed" that if the hoist "would not stand up to the work and accomplish the purposes of the defendant" and that if the hoist did not work "plaintiff would make the same do so, and if the machine would not work the plaintiff would charge the defendant nothing therefor." The plaintiff argues that the parties have by the agreement, alleged in the answer, limited the defendant's remedy for a breach of the warranty to the right to decline to pay for the machine, and that, therefore, Stone is not entitled to recover damages for a breach of the warranty. If by the stipulation "the plaintiff would charge the defendant nothing therefor" is meant that the defendant could refuse to accept the hoist, then the stipulation added nothing to the rights of the defendant since the law gave him the right to rescind the contract and return the machine within a reasonable time after delivery, for it must be remembered that the parties contracted for a machine which was not yet in existence when they made the agreement: *Steiger* v. *Fronhofer,* 43 Or. 178, 183 (72 Pac. 693) ; *Lenz* v. *Blake,* 44 Or. 569 (76 Pac. 356). If, on the other hand, the parties intended to agree that the defendant could keep the hoist without paying for it if it did not work, it constituted an additional rather than an exclusive remedy. Generally speaking, the parties to a contract for the sale of personal property have a right to agree that a defined remedy shall be exclusive; but in the absence of language evidencing an intention to make a given

remedy, like the one in question here, exclusive of all others, it is treated as cumulative and permissive rather than exclusive and mandatory; and hence the buyer is usually permitted to avail himself of the special remedy; or, if he chooses, he may accept the property and recover damages for a breach of the warranty. There is nothing to indicate that the parties intended that the right not to pay should be the exclusive remedy. It is not necessary to determine whether Stone could have returned the property and also recover damages for a breach of the warranty, for the reason that he elected to keep the hoist, and as ruled in *Douglass Axe Mfg. Co.* v. *Gardner*, 10 Cush. (64 Mass.) 88:

"The buyer has, if not a double remedy, at least a choice of remedies, and may either return the property within a reasonable time, or keep it and maintain an action for breach of the warranty."

The warranty was not rescinded, violated or destroyed by the stipulation not to charge, especially when the defendant waives, as he has done, any right arising out of the promise not to charge and sues on the warranty: *Sanford* v. *Brown Bros. Co.*, 208 N. Y. 90 (101 N. E. 797, 50 L. R. A. (N. S.) 778); *Nave* v. *Powell*, 52 Ind. App. 496 (96 N. E. 395); *McGill* v. *Hall* (Tex. Civ.), 26 S. W. 132; *Fitzpatrick* v. *D. M. Osborne & Co.*, 50 Minn. 261 (52 N. W. 861); *Aultman M. & Co.* v. *Theirer*, 34 Iowa, 272; *Gaar, Scott & Co.* v. *Patterson*, 65 Minn. 449 (68 N. W. 69); *Obenchain* v. *Roff*, 29 Okl. 211 (116 Pac. 782); *Battey* v. *Lunt M. & Co.*, 30 R. I. 1 (73 Atl. 353, 136 Am. St. Rep. 926); 2 Mechem on Sales, § 1801; 35 Cyc. 438.

The remaining assignments of error relate to the measure of damages. The rule for measuring damages for the breach of a contract is found in the celebrated English case of *Hadley* v. *Baxendale*, 9 Exch.

341, and in the subsequent but equally noted American case of *Griffin* v. *Colver*, 16 N. Y. 489 (69 Am. Dec. 718). In the former case the court states the rule in the following language:

"Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it."

Continuing further, the reasons are given thus:

"Now, if the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendant, and thus actually known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily flow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances from such a breach of contract. For, had the special circumstances been known, the parties might have specially provided for the breach of contract by special terms as to the damages in that case; and of this advantage it would be very unjust to deprive them."

Although employing different language, the American case announces the same rule, for we find the doctrine stated thus in *Griffin* v. *Colver*, 16 N. Y. 489, 494 (69 Am. Dec. 718):

"The broad general rule in such cases is, that the party injured is entitled to recover all his damages, including gains prevented as well as losses sustained; and this rule is subject to but two conditions: The damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract; that is, must be such as might naturally be expected to follow its violation; and they must be certain, both in their nature and in respect to the cause from which they proceed."

In 2 Mechem on Sales, Section 1757, the author restatés the rule established by *Hadley* v. *Baxendale* and *Griffin* v. *Colver,* in this manner:

"The party who has broken his contract is liable to make compensation to the other for all such losses resulting from that breach as are either (1) The ordinary, the usual, the commonly to be expected consequences of such a breach of such a contract; or (2) the peculiar or unusual consequences of the breach of the particular contract in question, if, under the circumstances, it can fairly be said that both parties had those consequences in their contemplation, at the time the contract was made, as a probable result of its breach; and if those unusual consequences are neither uncertain in their nature nor remote as to their cause."

6–8. When the seller of personal property has breached his express warranty to furnish an article of a specified kind, quality or condition, he is liable, as in the case of any other kind of a contract, for both general and special damages: 2 Mechem on Sales, §§ 1817, 1821; 35 Cyc. 451, 465; 30 Am. & Eng. Ency. Law (2 ed.), 209, 214. The acceptance of the property does not of itself preclude the buyer from recovering damages: *Cassidy* v. *Le Fevre,* 45 N. Y. 562. As in other contracts, the buyer owes an active duty to exercise ordinary care to keep the damages as low as possible;

30 Am. & Eng. Ency. Law (2 ed.), 223; *Wright* v. *Computing Scale Co.,* 47 Wash. 107 (91 Pac. 571).

9. If the defendant was obliged to rent the donkey-engine in order to prevent loss to himself then, to the extent that such expense was extra in character and reasonable in amount, the defendant is entitled to reimbursement: *Drake* v. *Sears,* 8 Or. 210, 213; *Hoskins* v. *Scott,* 52 Or. 271, 279 (96 Pac. 1112); *People's Savings Bank* v. *Waterloo & Cedar Falls R. T. Co.,* 118 Iowa, 740 (92 N. W. 691); *Optenberg* v. *Skelton,* 109 Wis. 241 (85 N. W. 356); *Carroll-Porter Boiler & Tank Co.* v. *Columbus Mach. Co.,* 55 Fed. 451 (5 C. C. A. 190).

10, 11. The theory of the law is to award compensation for gains prevented and for losses sustained. The party who is damaged by the breach of a contract is not prevented from recovering anticipated profits merely because they are such. If it is reasonably certain that the breach of a contract has deprived the complaining party of a profit which was contemplated or can reasonably be presumed to have been contemplated by the parties at the time the contract was made then the party committing the breach is liable for the loss of the profit: *Drake* v. *Sears,* 8 Or. 209, 214; *Hoskins* v. *Scott,* 52 Or. 271, 276 (96 Pac. 1112); *Fields* v. *Western Union Tel. Co.,* 68 Or. 209 (137 Pac. 200); *McGinnis* v. *Studebaker Corp.,* 75 Or. 519, 522 (146 Pac. 825, 147 Pac. 525, Ann. Cas. 1917B, 1190, L. R. A. 1916B, 868). The rule is illustrated in the following cases where the complaining party was not permitted to recover profits claimed to have been lost on account of a breach of warranty: *Weybrick & Co.* v. *Harris,* 31 Kan. 92 (1 Pac. 271); *Puget Sound Iron & Steel Works* v. *Clemmons,* 32 Wash. 36 (72 Pac. 465); *Wright* v. *Computing Scale Co.,* 47 Wash. 107 (91 Pac.

571); *Blymer Ice Machine Co.* v. *McDonald,* 48 La. Ann. 439, 449 (19 South. 459); *Moulthrop* v. *Hyett,* 105 Ala. 493 (17 South. 32, 53 Am. St. Rep. 139). The following are examples of cases where the buyer was permitted to recover profits which he lost by reason of the breach of the seller's warranty: *The Crompton & Knowles Loom Works* v. *Hoffman,* 5 Ont. L. Rep. 554; *Murray Co.* v. *Putman,* 61 Tex. Civ. App. 517 (130 S. W. 631); *Alamo Mills Co.* v. *Hercules Iron Works,* 1 Tex. Civ. App. 683, 688 (22 S. W. 1097). Some of the language employed in *Alamo Mills Co.* v. *Hercules Iron Works, supra,* is so apropos that we here quote from the opinion of the court:

"The right, or not, to recover profits for a breach of a contract, does not depend upon an arbitrary rule to be adopted by a court, but upon the principles that should control the right. The law does not condemn profits, as such, as a measure of damages. The question is, would the loss of profits be the direct result of the breach, and would such loss 'reasonably be supposed to have entered into the contemplation of the parties at the time of making the contract?' Conjectural profits would not be allowed, not for the reason that profits are proscribed, but because they are uncertain. If they become sufficiently certain, are the direct result of the breach, and the parties were in possession of such facts as would charge them, as reasonably intelligent men, with the probable consequences of the breach, then profits fall within the rule, and may be recoverable as damages."

In order to recover special damages for a breach of warranty the buyer must allege and prove that the special damages claimed by him are such as were contemplated or may reasonably be said to have been contemplated by the parties at the time they made the contract: 35 Cyc. 451. It will be necessary now to direct attention to the evidence.

The bill of exceptions contains a narrative of the testimony given by the defendant, and instead of saying that the defendant testified to this or to that we shall, for the purposes of the appeal, give an affirmative statement of the facts on the assumption that the facts are exactly as testified to by the defendant. However, it must be understood that we do not attempt to decide any question of fact. The plaintiff learned that Stone wished to purchase a hoist to be used in raising gravel into bunkers, and inquired of Stone "what the chance was for building that double drum-winch." The plaintiff "was warned how this winch had to be built" and was told that "on account of the high speed of the machine necessary to do the work that he [the plaintiff] had to put bronze brass bushings in the bearings in order to do the work." The parties "discussed that it [the machine] was to be used with overhead lines and bucket; yard and a half bucket was to be used." The plaintiff "agreed to build a hoist there that would do—that would work perfectly —for $450"; and "if it did not do the work he [the plaintiff] would make it do the work or it would not cost us [the defendant] anything."

The plaintiff constructed a machine; it was delivered to Stone in July but he "did not start to use it until August 1st." The defendant "commenced raising gravel" but he "never could raise over half a bucket." "The bolts were not big enough"; the frictions were made of green spruce when they should have been "good oak or hickory"; the thrust-bearings were small "where they should be large"; Stone asked the plaintiff "time and time again to come down and overhaul it and put in thrust-bearings"; but the plaintiff "never did come down." Finally on August 24th "the pullback drum froze right on the shaft" because of defects in the machine. Stone immediately notified

the plaintiff.   Feeney & Bremer Company had the
machine ''down here in the shop'' but delayed making
the necessary repairs.   ''The Arenz Construction
Company was on the county work and needed rock and
gravel bad''; the county ''needed gravel bad''; Stone
told the plaintiff that he was going to hire a donkey-
engine if the plaintiff did not repair the damaged
hoist; and finally on or about August 29th the plaintiff
commenced to work on the machine.   The plaintiff did
not redeliver the hoist until June or July, 1916.   Stone
rented and installed a donkey-engine.   While the rec-
ord does not disclose the exact date it may be inferred
that the donkey-engine was ready for operation pos-
sibly on August 30th, and Stone continued to use it
for about six weeks.   ''If the hoist had worked ac-
cording to contract'' Stone would ''not have been out
a nickel on any'' of the expense incurred for the
donkey-engine.

''Along about the 25th of August'' the road super-
visor came to Stone and stated that he was going to
build a certain road and that he would take gravel
from the defendant at thirty-five cents per yard.   The
Arenz Construction Company was building a pavement
''and the county was furnishing the crushed rock''
and the defendant ''was to put in the gravel.''   The
defendant ''could put in half gravel and possibly a
little more if the county could not furnish crushed
rock.''   The defendant ''was getting $1.65 for the
gravel from the Arenz Construction Company'' and
was realizing ''about 70 cents a yard profit'' when
using the electric hoist while the profit was only 60
or 65 cents a yard after the installation of the donkey-
engine.   The county road supervisor ''came there on
August 28th and got 8 yards''; the donkey-engine was
not yet ready for use although it was being installed
and hence the defendant could not furnish any more

gravel and he told the road supervisor "to go in on the bar and get it, and they went in on the bar and loaded 337 yards, which I could have furnished them if the donkey had been working."

If the defendant is entitled to recover for a loss of profits his right is limited to the loss of profits which he could and would have made on the deliveries to the county and the Arenz Construction Company. There is nothing in the testimony of the defendant to show that he lost any profits, so far as the Arenz Construction Company is concerned, between the 1st and 24th of August and he could not have lost any profits during that time so far as the county is concerned because the road supervisor did not speak to him about gravel until August 25th, and the county did not call for gravel until August 28th. While the evidence does not disclose the exact date when the donkey-engine was ready for installation, it is fair to presume that it could have been operated possibly as early as August 30th and probably not later than September 1st. According to the testimony of the defendant himself the donkey-engine "did the work excellently all the time we had it," and, therefore, the fair inference is that the defendant was able to work the bucket to full capacity. It does not affirmatively appear from the testimony of the defendant whether any of the 337 yards of gravel taken by the county was taken after the donkey-engine was ready for operation; but if the county took any of that gravel after the donkey-engine was ready for operation the defendant is not entitled to claim a loss of profits on the gravel so taken. The same rule applies to the Arenz Construction Company. The defendant does not say affirmatively that he did not deliver any gravel after August 24th to the Arenz Construction Company. The defendant cannot claim damages for alleged lost profits

on gravel delivered to the Arenz Construction Company after the donkey-engine was installed.

The answer speaks of a contract for electric power; and the defendant testified about the same subject. However, the defendant did not say that he did in fact make a contract for electric power binding himself to pay for electricity whether he used it or not. He cannot charge for electricity unless he became liable for it.

12. If the defendant lost profits on account of the breach of warranty then it may be conceded that such a loss was the proximate consequence of the breach of warranty; and yet it is not enough for the complaining party merely to prove that the loss was the proximate consequence of the breach, for he must also allege and prove that the loss was within the contemplation of the parties or that it can reasonably be said to have been within the contemplation of the parties at the time they made the contract for the hoist. It is true that the evidence shows that the plaintiff agreed to build an electric hoist that would do the work of running a yard and a half bucket which was to be operated with overhead lines; but the evidence does not sufficiently show that the plaintiff knew that the buyer intended to use it in supplying gravel to the public. If the seller did not know that the buyer intended to use the hoist for the purposes of selling gravel, it could not be said that the parties contemplated the loss which the buyer claims he sustained: *Puget Sound Iron & Steel Works* v. *Clemmons,* 32 Wash. 36 (72 Pac. 465). If the plaintiff knew that the defendant intended to use the hoist for the purpose of delivering gravel to the public then the parties contemplated that a breach of warranty would result in a loss to the defendant.

If the defendant lost profits on account of being unable to deliver gravel to the county and to the Arenz Construction Company the loss would be the proximate consequence of the breach and since the loss can reasonably be said to have been within the contemplation of the parties at the time they made the contract and the profits are not conjectural but are capable of being ascertained, the defendant is entitled to compensation: *Fields* v. *Western Union Tel. Co.*, 68 Or. 209 (137 Pac. 200). A careful examination of the record presented here leads us to the conclusion that justice requires a reversal of the judgment; and it is therefore ordered that the cause be remanded for a new trial.                    REVERSED AND REMANDED.

McBRIDE, C. J., BURNETT and BENSON, JJ., concur.

———

Former opinion sustained July 30, 1918.

ON REHEARING.

(174 Pac. 152.)

In Banc.

On rehearing.  Former opinion sustained.

For appellant there was a brief submitted by *Messrs. Johnson & Handley.*

For respondent there was an oral argument by *Mr. H. T. Botts.*

BURNETT, J.—The principal error assigned by the plaintiff was the admission of testimony about the loss of profits which the defendant claimed he might have made in furnishing gravel to the Arenz Construction Company and Tillamook County if the hoist in

question had performed as the plaintiff contracted it should. The former opinion reversing the judgment was framed in part upon the assumption that the bill of exceptions contained all of the evidence in the case. The petition for rehearing points out that this is erroneous and that although the stipulation attached to the bill declares that it is a correct statement of the testimony of the defendant, as well as a true statement of the objections opposed thereto, yet it does not indeed give all the testimony in the case, and the argument is that we should presume that other evidence was received at the trial upon which the verdict properly could be founded. Because of depending on this mistaken hypothesis we awarded a rehearing. A careful re-examination of the case leads us to the conclusion that the defect in the defendant's case is more deepseated than in the mere testimony.

13, 14. The answer says that the hoist "completely broke down" on August 24, 1915, and that the defendant procured other machinery to operate his plant at an expense of $403.95. In other words, he equipped himself with other machinery at that cost. Respecting the loss of profits the averment of his answer is as follows:

"That the defendant has further been damaged by failure of the said machine so furnished by plaintiff to perform the work agreed in that solely by reason of the incapacity of the said hoist to properly perform, the defendant lost the sale of 500 yards of gravel which he could have sold during the month of August, 1915, to Arenz Construction Company, a corporation, and defendant would have sold at a profit of 50¢ per yard, and the quantity of 340 yards of gravel which defendant could and would have sold during said period to Tillamook County, Oregon, at a profit of 20¢ per yard."

By this quoted allegation he seeks to add to the cost
of the machinery and so increase his damage. He does
not say that either the Construction Company or the
county applied to or contracted with him to take
gravel, nor does he show but that it was while he was
using the substituted plant he lost the sales mentioned.
His statement on that feature is a mere conclusion and
does not by averment of facts connect the loss of sales
with the failure of the hoist. His mere expectation
that the county and the other party would apply to him
for gravel manifestly would not be a basis for dam-
ages. He must go further and show that they actually
contracted to buy from him a specified quantity of
that material at a stated price, or that in good faith
they offered to make such an agreement and that he
was compelled to decline the offer because the hoist
in question would not do the work. Besides this, if
at that time he had procured the new machinery his
loss of profits on a deal with the parties could not be
attributed to the defect in the hoist furnished by the
plaintiff. He could make the same profits by using
the substituted machinery. In brief, the answer dis-
closes that the defendant is keeping the hoist which
the plaintiff sold him, yet trying to collect the price
of a substitute as well as damages for loss of profits,
without showing that he had any contract or offer to
contract in good faith whereby he could have realized
any gain. As he states his case in that feature, the
loss of profits is too remote to be considered as an ele-
ment of damage. In *Hoskins* v. *Scott,* 52 Or. 271, 277
(96 Pac. 1112), the plaintiff sought to recover for loss
of profits he would have made during the threshing
season with his machine if the defendant had per-
formed its agreement to furnish him a competent en-
gineer and a suitable engine with which to supply
power to his thresher. He gave evidence that there

were large areas of grain in the neighborhood where he operated, which he could have threshed if he had had the engine agreed upon, but did not show that he had contracted with any particular persons, and the Court, speaking by Mr. Commissioner KING, said:

"Enforceable contracts should have been shown from which the quantity of grain he would probably have threshed, including probable losses, with reasonable certainty could have been estimated. Otherwise, the damages sought were too speculative to be entitled to consideration."

In *Dose* v. *Tooze,* 37 Or. 13, 16 (60 Pac. 380), Mr. Justice MOORE used this language:

"General damages are such as a party necessarily sustains from the wrong of which he complains and such as the law presumes would inevitably result from the act or omission of the adverse party causing the injury, and are recoverable under an averment in the complaint of plaintiff's pecuniary loss, without stating their particular nature: * * Special damages, however, do not necessarily result from the wrongful act or omission of the adverse party, but are such as may follow from them as a natural and proximate consequence caused by his negligence or design, and as the law does not presume that such an effect will inevitably follow, it is incumbent upon the plaintiff to allege specifically in the complaint the facts constituting his special damages in order that the adverse party may have notice thereof and be prepared for trial."

In *Blagen* v. *Thompson,* 23 Or. 239 (31 Pac. 647, 18 L. R. A. 315), the plaintiff had an actual contract for the purchase of some land the value of which he sought to enhance by engaging the defendants to build a car line to it, with a view to making it more accessible to the City of Portland and hence more desirable for suburban residences. All this the defendants knew and it was all averred in the pleadings. There was a

stated certainty that some damage, however uncertain in amount, would result from failure to build the road, and the court there said:

"The rule that damages which are uncertain or contingent cannot be recovered, does not embrace an uncertainty as to the value of the benefit or gain to be derived from the performance of the contract, but an uncertainty or contingency as to whether such gain or benefit would be derived at all. It only applies to such damages as are not the certain result of the breach and not to such as are the certain result, but uncertain in amount."

In the instant case, however, while a certain amount of loss of profits is mentioned, the statement leaves it uncertain whether there would have been any damage, for want of any covenant on the part of the county or the Construction Company to buy the defendant's gravel, or any valid offer on their part to purchase, which the defendant was unable to accept because plaintiff's hoist would not operate as represented. If he would recover from plaintiff upon this score, the defendant's relation to those from whom he would have realized gain must be as clearly shown as that to the plaintiff by whose default he claims to have been prevented from making a profit. It is not enough that he had prospects of contracting with the parties named. He must have had hold enough upon them to give rise to some degree of certainty within the meaning of the cases cited. His allegation of the contract and the breach of it entitles him to general damage, nominal or more, as the evidence may disclose. But if he would go further and recover special damage for loss of profits he must aver facts to which that measure of damages may be applied. This defect in the pleading could not be raised by general demurrer, for there is enough in the answer to show a contract and a

breach thereof from which accrue at least nominal damages. In this connection, in *Sunnyside Land Co. v. Willamette Bridge Ry. Co.*, 20 Or. 544 (26 Pac. 835), Mr. Justice BEAN used this language:

"If the allegations of the complaint in which plaintiff seeks to lay down the rule by which the damages are to be estimated are insufficient or irrelevant, the defect cannot be reached by demurrer, so long as the other parts of the complaint contain a sufficient statement. If these damages are sought to be recovered at the trial, the defendant may then object to the evidence. An erroneous claim of damages does not make a claim demurrable."

The bill of exceptions discloses that the plaintiff pursued this course, objecting to the introduction of testimony about profits on the ground, among others, that they were too remote, bringing them within the reason of the rule laid down in the excerpt from *Hoskins* v. *Scott*, 52 Or. 271 (96 Pac. 1112), and the objection should have been sustained under the then state of the pleadings.

15. Beyond all this, and also conceding for the moment that he had contracts with the company and the county, it is not shown that the defendant lost his gravel. He still has that property and for aught that appears could have sold it in the market to other persons at possibly an increased price. It is not like a contract for services which the complaining party was prevented from performing. Without having parted with the commodity, he is in a situation, so far as damages are concerned, analogous to that of a seller whose buyer refuses to take the goods for which he contracted. At least the defendant here could not recover more damage from the plaintiff on the score of lost profits than he could obtain from one to whom he had agreed to sell the gravel but who, having agreed to

buy, refused to take it at the time stipulated for delivery.

"The general rule is that the measure of damages when the buyer repudiates the contract and refuses to receive and accept the goods is the difference between the contract price and the market value of the goods at the time and place of delivery": 35 Cyc. 592.

The supposed case and the one stated by the defendant here are alike in the feature that in each the owner has been prevented from making sale of his goods and still has them on hand for all that appears. In either instance what would make him whole would be the difference between the agreed price, if he had a contract, and the lesser market value at the time and place of delivery: *Hockersmith* v. *Hanley*, 29 Or. 27 (44 Pac. 497); *Krebs Hop Company* v. *Livesley*, 59 Or. 574 (114 Pac. 944, 118 Pac. 165, Ann. Cas. 1913C, 758); *Russell Miller Milling Co.* v. *Bastasch*, 70 Or. 475 (142 Pac. 355). If he would recover on that score, the defendant should frame his pleading accordingly. For these reasons, we adhere to our former conclusion.

FORMER OPINION SUSTAINED.