Argued February 11; decided April 6, 1896.

## HOCKERSMITH *v.* HANLEY.

[44 Pac. 497.]

1. BREACH OF CONTRACT OF SALE—MEASURE OF DAMAGES.—Where the seller of cattle knows that the buyer contracted to purchase the same for resale at another place, and there is no market in which to purchase at the place where they are bought, the measure of damages for the seller's breach of the contract is the difference between the contract price, added to the cost of transportation, and the current market price at their destination on the day when it was contemplated by the parties that the cattle should arrive.

2. IDEM.— A purchaser of cattle is entitled to recover from the seller on a breach by him of the contract such usual and reasonable charges as the former is compelled to pay a railroad company for specially furnishing and holding in readiness necessary cars for the shipment of such cattle, where it was understood by the parties that the transportation would have to be specially provided for.

APPEAL from Jackson: HIERO K. HANNA, Judge.

This is an action by Joseph W. Hockersmith against M. F. Hanley to recover for a breach of contract on a sale of certain beef cattle. It is alleged,

in substance, that about February twentieth, eighteen hundred and ninety-four, the parties hereto entered into a contract by the terms of which plaintiff bought of defendant one hundred and fifty-nine head of beef cattle, for which he agreed to pay two and one half cents per pound, live weight, as they should weigh at Medford, Oregon, one thousand dollars to be paid "cash in hand," and the balance on the arrival of the cattle in San Francisco. It was agreed that plaintiff should cause the cattle to be shipped by cars, at once, at his cost and expense, from Medford to San Francisco, and that upon their arrival at the latter place plaintiff would pay defendant the balance of the purchase price; that defendant should, upon demand of plaintiff, cause the cattle to be weighed and delivered in the stock yards and put on board the cars at Medford. It is further shown that plaintiff paid one thousand dollars upon the contract, and, upon his demand, defendant took the cattle to Medford and had them weighed; that plaintiff had provided and had in readiness railway cars sufficient for their shipment to San Francisco, and was then and there able and willing to make such shipment. It is then alleged, "That after * * * the weighing of said cattle and delivery of the same at Medford, Oregon, defendant wrongfully and unlawfully refused to permit said cattle to be transported to San Francisco, * * * and wrongfully and unlawfully took said cattle from the possession, custody, and dominion of plaintiff, and refused and still does refuse unlawfully to permit plaintiff to keep possession or control of said cattle, or to allow the same

to be shipped or transported to San Francisco." The prayer is for the one thousand dollars paid as damages. Special damages are also alleged,—*first*, for liability incurred by plaintiff in providing transportation for the cattle; and, *second*, by reason of being prevented by defendant from making a resale in San Francisco at a profit of one half cent on the pound. The defendant in effect contends that plaintiff has stated the contract in part only, and that it was further agreed between them that the cattle should remain in the possession and under the control of defendant or his agent, and that the title thereto should not pass to plaintiff until the purchase price had been fully paid. He denies having wrongfully or otherwise refused to allow the cattle to be shipped, that plaintiff ever had the control or dominion of them, or that he took them from plaintiff, and alleges his readiness at all times to allow the same to be shipped in obedience to the terms of the contract. The allegations of special damages are denied in part. The defendant further answering alleges, in effect, that he was ready and willing to perform at the time contemplated by the contract, that plaintiff refused to perform on his part, and that he was compelled to keep and return with the cattle to his farm, and thereafter sold the same to other parties for a less figure than plaintiff had agreed to pay, thereby rescinding the contract; and he seeks to recoup in damages in part against the thousand dollars advanced, but deposits with the clerk of the court two hundred dollars for the benefit of the plaintiff. Evidence was offered at the trial

by each of the parties tending to support their respective statements and understanding as to the terms and conditions of the contract.

As touching this feature of the trial, the court instructed the jury as follows: " 1. If you believe from the preponderance of the evidence the following facts are established, namely, that the plaintiff agreed to buy and the defendant to sell the cattle; that the price per pound was agreed upon; that a part of the purchase money was paid by plaintiff and received by defendant, and the plaintiff agreed to pay the balance of the purchase money at a future time and place, namely, on the arrival of the cattle in San Francisco; that the cattle were by agreement brought to Medford and weighed; that they were accepted by the plaintiff; that the defendant delivered them to plaintiff, and plaintiff took them into his custody, and at his cost and expense kept them over night ready and prepared to ship them to San Francisco next day,—then I instruct you that such facts, if so established by a preponderance of the evidence, constitute a sale of the cattle by defendant to plaintiff, and would give plaintiff ownership, a right to possession of the cattle. All these facts, if established, would tend to establish the fact of a sale and delivery of the cattle. 2. If you find from a preponderance of the evidence that the sale of the cattle was made, and the defendant, without right, prevented the cattle being transported to San Francisco, and unlawfully took them into his (defendant's) possession, and retains such possession as against plaintiff, then the plaintiff is entitled to

recover from the defendant such portion of the purchase money as the plaintiff may have heretofore paid, and herein admitted to be one thousand dollars. To the giving of these instructions objections were entered, exceptions allowed, and error assigned. The verdict and judgment being for plaintiff the defendant appeals. Other facts and assignments of error will be noticed in their order in the opinion.

REVERSED.

For appellant there was a brief and an oral argument by *Messrs. Lionel R. Webster* and *A. S. Hammond.*

For respondent there was a brief and an oral argument by *Mr. William M. Colvig.*

Opinion by MR. JUSTICE WOLVERTON.

The parties are agreed upon the terms and conditions of the contract, save and except such as relate to the passing of title and the transfer of possession. The gist of plaintiff's contention is that by its terms the cattle were to be weighed and delivered into his possession, and with such delivery both the title and right of possession should pass out of the defendant, and thereafter rest solely with the plaintiff, and that the date of their arrival in San Francisco was simply a time fixed for payment of the last installment of the purchase price; while the defendant claims that the contract contained a condition which entitled him to retain both the title and possession until the cattle arrived in San Francisco, and plain-

tiff had paid the balance due in full. The action is upon the contract and for a breach of its conditions, and not for a tortious taking of the cattle; so that the issues for the jury were narrowed as respects the feature of the case under consideration. The contract not being in writing, it became necessary for them to find, *first*, what the terms of the contract were in respect of which the parties disagreed at the trial, that is to say, whether it contained the provisions which defendant claimed for it; and, *second*, whether there had been a breach of the contract, and, if so, by whom. The first instruction complained of tells the jury that if certain facts were proven to their satisfaction, all which were admitted by defendant, except, perhaps, the submitted fact as to whether there was delivery of the cattle by defendant to plaintiff (and even this was admitted in a qualified sense, that is, in a sense which would enable the plaintiff to proceed with the shipment); that such facts if established would constitute a sale, a completed sale by delivery, which would give plaintiff ownership and right of possession. The second instruction then proceeds upon the assumption that if a sale and delivery had been thus accomplished, and the jury should ascertain that such was the case, then, if the defendant unlawfully resumed possession of the cattle, the plaintiff would be damaged by reason of the latter fact in the amount he had advanced upon the purchase price. The contract for the sale was entered into prior to the time the cattle were taken to Medford or the transactions which took place there had oc-

curred, and the vice of the instructions consists somewhat in confounding what took place in the formulation and the conclusions reached in the consummation of the contract itself, with what took place in an attempt by the parties to perform and to carry into effect its terms and conditions, but more especially in ignoring entirely the contention of defendant respecting the contractual conditions touching the passing of title and possession to the plaintiff. The contract is one thing, and its performance quite another. What was done at Medford was evidently with the purpose of performing under the contract, and the parties disagreed as to its conditions, thus giving rise to the present controversy. In so far as it was agreed at the trial by and between the parties what the terms of the contract were, there could be no contention, and the jury had to take the contract as established in those particulars, but the parties could not agree as to whether the contract contained the important stipulation touching title and possession which defendant contended that it did contain, and which constituted a part and parcel of it as originally understood and agreed upon. Now, it should have been distinctly left to the jury, under an appropriate instruction, to first determine what the contract was in this respect. It was perfectly competent for the parties to have agreed touching the time and under what circumstances the title and possession should pass to the purchaser, and it is not an unusual thing, where the purchase price of personal property is not fully

29 OR.—3.

paid, for the vendor to retain the title and especially the possession and control of the subject matter as security for its payment. Such a reservation is in the nature of a lien, and, if stipulated for, is a valuable right, which the vendor is entitled to insist upon and have respected. It may be conceded, however, that the vendor may waive his lien, as he could any condition precedent, if he should see fit so to do, and look to the purchaser's responsibility alone for such of the purchase money as may remain unpaid. The controverted question thus submitted as to whether it was a condition of the contract that defendant might retain the title and possession until he had been fully paid being settled by the jury, it would then be competent for them to determine as to a breach, and, if a breach had been suffered, which party was at fault. It is admitted that the thousand dollars had been paid. If the defendant was not entitled under the contract to withhold title and possession, it is quite evident that he was at fault in not making absolute delivery at Medford; but, if his contention was sustained in the minds of the jury, he was entitled to retain possession until the cattle reached San Francisco and the purchase price had been paid; and he had a right to insist also that they should be shipped to himself or an authorized agent. These instructions were calculated to mislead the jury in their deliberations touching the contract and its proper observance by the parties, and hence it was error to give them.

1. If the jury should find for the plaintiff, both as to the conditions of the contract and the breach thereof by defendant, then it would remain to determine the amount of damages he sustained by reason thereof. It is not disputed but that in such event the thousand dollars paid would constitute an element in the estimation of damages. As touching another element of which it was also pertinent to make inquiry, and which is alleged as special damages, the court instructed the jury that "if defendant knew that plaintiff contracted to purchase the cattle to resell upon their arrival in San Francisco, * * * the plaintiff is entitled to special damages to the amount of any difference which may be shown by the evidence between the contract price agreed to be paid for the cattle, added to the cost of transporting them to San Francisco, and the current market price of said cattle in San Francisco on the day when it was contemplated by the parties that the cattle should arrive in San Francisco. I believe that to be the rule in this case, where cattle are bought, and there has been a violation on the part of one of the parties, (and in this case on the part of the defendant,) such as prevented the cattle being transported to San Francisco and there resold, that would be the proper measure of damages." Two objections are taken to this instruction: *First*, that it does not state the proper rule for determining the amount of damages in such a case; and, *second*, it is claimed that the latter part of the instruction tells the jury, in effect, that the defendant had violated the contract. The first objec-

tion is based upon the assumption that the action is one for a tortious taking of the cattle and a conversion by defendant, but, as we have seen, the action is upon the contract and for a breach. The assumption is therefore erroneous, and the reason assigned cannot support the objection. But the defendant contends that the instruction announces a correct principle of law as applicable to the facts which the evidence tended to establish. The following facts stand admitted by the pleadings: That at the time of entering into the contract the defendant well knew and had in contemplation the known purpose of plaintiff to resell said cattle at the public market rates current for cattle which should prevail upon the day of their contemplated arrival in San Francisco, to a buyer then known to plaintiff, and who had theretofore agreed with him to purchase at such rates and at the time of such arrival.

It may be stated as a general rule, that the measure of damages for the breach of an executory contract to sell and deliver is the difference between the contract price and the market price of the goods bargained for at the time and place of the contemplated delivery. The reason of the rule is that the purchaser may, if the vendor fails in delivery, go into the market and supply himself with such goods as he had contracted for; and thus it is that if the market price exceeds the contract price he would be directly injured by the amount of the difference. This difference he could recover as damages. But the rule fails of application when there is no market at the place of de-

livery, and the goods are bought for resale at a distant market, and this fact was known to the vendor at the time of entering into the contract: 1 Sutherland on Damages ( 2d ed.), 116. The leading case announcing the principle upon which damages are awarded for breach of contract where the conditions - above suggested prevail, is that of *Hadley* v. *Baxendale*, 9 Exch. 341. At page 353 ALDERSON, B., says: "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, ( *i. e.*, according to the usual course of things,) from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great mul-

titude of cases not affected by any special circum-
stances, from such a breach of contract." Mr. Ben-
jamin deduces the following rule from the English
cases where goods have been bought for the pur-
pose of resale, and there is no market in which
the buyer can readily obtain them: "If, at the
time of making the contract, the seller knows that
the buyer buys the goods with the intention and
for the purpose of reselling them, although he may
or may not know of any particular subcontract
existing or contemplated, the inference is that the
seller contracts to be liable for the increased dam-
ages which will flow from a breach of the contract
under the special circumstances; and, applying the
second part of the rule laid down in *Hadley* v.
*Baxendale*, those damages may readily be supposed
to be within the contemplation of the parties:"
Benjamin on Sales (6th ed.), 8796.

The American doctrine is substantially the same,
and comes within the reasoning of many cases, which
may be stated briefly. A person injured by the
breach of a contract to which he has become a party
with another is entitled, upon principle, to recover
damages commensurate with the injury he has sus-
tained, and this will include gains prevented as well
as losses sustained. They must be such, however, as
naturally result from the breach, or may reasonably
be considered to have been in the minds of the par-
ties at the time of entering into the contract; the
contract itself being, impliedly at least, formulated
with reference thereto in the event of a violation of
its conditions. The intention of the parties is to be

ascertained from a consideration of the contract taken in connection with the surrounding circumstances and conditions of which they are cognizant; and if the circumstances and conditions are such as to make it apparant that the contract was entered into and known by the contracting parties to have been consummated to enable one of them to serve or accomplish a particular purpose, the liability of the other for its violation will be determined and the damages ascertained with reference to the effect of the breach in hindering or defeating the contemplated object. They must also be certain, and flow directly and naturally from the breach; or, to put it in another way, they must not be the remote but the proximate consequence thereof, and not speculative or contingent: 1 Sutherland on Damages (2d ed.), 103, 118; *Griffith* v. *Colver*, 16 N. Y. 489 (69 Am. Dec. 718); *Booth* v. *Spuyten Duyvel Mill Company*, 60 N. Y. 492; *Lewis* v. *Rountree*, 79 N. C. 122 (28 Am. Rep. 309); *Harrow Spring Company* v. *Whipple Harrow Company*, 90 Mich. 147 (30 Am. St. Rep. 421, 51 N. W. 197); *McHose* v. *Fulmer*, 73 Pa. St. 367; *Abbott* v. *Hapgood*, 150 Mass. 248 (5 L. R. A. 586, 22 N. E. 907, 15 Am. St. Rep. 193); *Halstead Lumber Company* v. *Sutton*, 46 Kan. 192 (26 Pac. 444); *Vickery* v. *McCormick*, 117 Ind. 594 (20 N. E. 495), and *Cockburn* v. *Ashland Lumber Company*, 54 Wis. 619 (12 N. W. 49). The last case cited is much in point. The plaintiff purchased of defendant at Ashland, Wisconsin, two cargoes of white pine deals, for resale in the market of Quebec, which was known to the defendant. The defendant failed to fill the contract, and, there being no

market at Ashland into which plaintiff could go to purchase the cargoes, the measure of damages was adjudged to be the difference between the contract price, with expense of transportation from Ashland to Quebec and cost of inspection added, and the price of such lumber at Quebec. Now assuming that there was no market at Medford whereat the plaintiff could purchase other cattle, as to which there was some evidence, (the question however being left to the jury if disputed,) the court's instruction was proper. As to the second objection, that the court in effect told the jury that defendant had violated the contract on his part, while the instruction is perhaps subject to criticism, yet it is not probable that the jury was misled, and it was therefore harmless. But, as the case must go back, there may be no occasion for such criticism on a retrial.

2.  The next objection was taken to the instruction of the court touching an expense incurred on account of having contracted with the Southern Pacific Company specially for cars by which to have the cattle shipped to San Francisco. It is alleged that the contract with the company contemplated that if the cars furnished in accordance therewith were not used that plaintiff should pay it for specially furnishing and holding them in readiness, and that it was understood by the parties that transportation would have to be so specially provided for, in order to enable plaintiff to ship the cattle in obedience to the conditions of the contract between him and the defendant. If there was evi-

dence tending to support such allegation, it was competent to instruct that, in case of a breach on the part of defendant, plaintiff was entitled to recover as damages such usual and reasonable charges as plaintiff was compelled to pay the company for specially furnishing and holding in readiness the cars and appliances for transportation necessary for the shipment of this lot of cattle. This element of damages comes also within the reasoning of the rule hereinbefore discussed, and the court's instruction in this regard is unobjectionable. As sustaining this special item of damages see *Borries* v. *Hutchinson*, 18 C. B. R. (N. S.), 460, and *Harrow Spring Company* v. *Whipple Harrow Company*, 90 Mich. 147 (30 Am. St. Rep. 421, 51 N. W. 197). Some other errors are assigned, but as the questions to which they allude will probably not arise on a retrial we have not considered them. The judgment of the court below will be reversed, and a new trial ordered.                                        REVERSED.